The opinion of the Court was afterward drawn up by
Parker C. J.
The previous appointment of a committee of the legislature, is either to be presumed from the act granting the turnpike road, or that act is a repeal pro tanto of the provision of St. 1804, c. 125, [Revised Stat. c. 39, § 1,] re quiring a committee of the legislature.
Did the corporation pursue the requisitions of the 2d section of the statute of 1804, as to the application to the Court of Sessions for a committee for laying out the road, assessing damages, &c. ?
The first committee made a report to the Court of Sessions in January, 1807. There are but three persons on this com mittee. They say they were appointed by the legislature They do not return that they gave any notice, nor do they assess any damages j all which is required by the statute of 1804. There is no record of any such appointment by the Court of Sessions, and there is no evidence that the records of that time have been lost or destroyed. This is wholly insufficient and cannot be considered as a laying out of the road according to the statute.
The foregoing committee made their return on the 3d oí *237 «anuary, 1807. On the same day the same three persons returned an estimate of damages, on a warrant to them from the Court of Sessions, granted on a petition of the corporation, and their authority was limited to the assessment of damages.
They do not by the copy of the record appear to have affixed any seals to their names, though this was required by the warrant. Five were appointed, three only acted.
The 2d section of the statute of 1804 [Revised Stat. c. 39, § 2,] requires, that when a turnpike road shall be granted by the legislature, it shall be laid out in the manner described by St. 1786, c. 67, in relation to the laying out of highways.[1] On application to the Court of Sessions, they are to issue a warrant under the seal of the court to five disinterested freeholders, who are to lay out the road and estimate the damages, and make return under their hands and seals.[2] In this case there does not appear to have been any such application, or warrant, or return. Three persons, who say they were authorized by the legislature, lay out the road between the two termini, but do not say through whose land it passes. The same three, who are part of a committee of five, assess damages to certain persons, but they were limited in their authority to this object alone; — so that the road does not appear ever to have been laid out according to law. These proceedings were wholly void. But the grant remains good, and might afterwards be carried into execution. We must look then to the subsequent doings.
In 1811, those who had become owners of the franchise, petitioned the Circuit Court of Common Pleas for the appointment of a committee to examine the road and fix the place for a gate. A committee was appointed, who reported that the road was well made, and they designated the place for a gate. But there is no record of any acceptance of the report, or of any allowance of the road, or any authority from the Court to erect a gate; without which, according to St. 1804, c. 125, § 4, they have no right to receive toll.[3] Here again there is a fatal defect.
In 1826, an attempt was made to cure all these defects, by *238 an application to the Court of Common Pleas, to approve and allow the road and direct in what place or places the gate should be erected. A committee of three was appointed, who in April, 1826, reported that the road was well made, and fixed the place for the gate.
This last proceeding is of itself correct, but there was no lawfully established road for it to stand upon, and therefoie it was nugatory.
We regret the necessity of adopting the same conclusion which was arrived at by the Court of Common Pleas on the trial of this action. Without doubt the legislature can and will, upon application, establish the road by law, if it shall appear that every thing has been substantially done, and that the defects may be cured without doing injustice to any one.
The argument for the plaintiffs founded on the supposed existence of their right for near twenty years, cannot avail; for there has been no actual existence of the road for a period long enough to establish a prescriptive right to take toll, if such a right can by any length of time be established.[1] It does not appear that the road existed in any form until 1811, five or six years after the act of incorporation was passed.

 See Revised Stat. c. 39, § 18.

 See Revised Stat. c. 24

 See Revised Stat. c. 39, § 22.

 See Mathews on Presumptions, 303.